(85 Misc. Rep. 598)

MECCA REALTY CO. v. KELLOGG TOASTED CORN FLAKES CO.

(Supreme Court, Trial Term, New York County. May, 1914.)

1. LANDLORD AND TENANT (§ 47*)—LEASE OF ROOF SPACE—CONSTRUCTION.

Where a lease of a roof for advertising purposes provided that if during the lease a building should be erected so as to obstruct the view of the signs of the tenant, on 30 days' notice he could cancel the lease, the erection of a large sign on the roof of a building obstructing a sign on the leased premises is a building within the lease authorizing cancellation on notice.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 112, 113; Dec. Dig. § 47.*]

2. LANDLORD AND TENANT (§ 47*)—CONSTRUCTION OF LEASE—"BUILDING."

The word "building" in its broad sense means a structure or fabric built or constructed, but in a lease for advertising purposes, providing that if the view of the signs is obstructed by a building, the lease should be canceled, a large sign obstructing the view is a building within the meaning of the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 112, 113; Dec. Dig. § 47.*

For other definitions, see Words and Phrases, vol. 1, pp. 889–899; vol. 8, p. 7593.]

Action by the Mecca Realty Company against the Kellogg Toasted Corn Flakes Company. Verdict directed on motion for defendant.

John J. Quencer, of New York City (Charles L. Hoffman, of New York City, of counsel), for plaintiff.

Alexander, Cohn & Sondheim, of New York City (David Leventritt, of New York City, of counsel), for defendant.

ERLANGER, J. The plaintiff's assignors leased to the defendant the roof space of their building on the north side of Forty-Eighth street for the purposes of advertising display, with a certain right of cancellation reserved to the tenant (this defendant) in the following words:

"If at any time during the term of this lease a building should be erected in the plot of ground to the south, located between Forty-Seventh and Forty-Eighth streets and Broadway and Seventh avenue, of such a height as to obstruct the view of the signs of the tenant as provided for herein, then the tenant may, upon thirty days' notice to the landlords in writing of its intention so to do, cancel this lease, said cancellation to take effect at the expiration of said thirty days' notice and at the end of a month, and this lease shall then be terminated."

[1, 2] During the term of the lease a large sign was erected upon the roof of an existing building on the plot referred to in this cancellation clause, whereby the view of the defendant's sign upon the leased premises was materially obstructed; the defendant gave notice of cancellation of the lease, and the question presented by the defense to this action for rent is whether the sign structure so erected was a "building" within the meaning of the condition above quoted. That the word "building" may indicate a structure not necessarily of the character of an edifice fashioned with walls and roof is undoubted. In its broad sense the word bears the meaning of a "structure" or "a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fabric built or constructed," and the definition of a "structure" is "any production or piece of work artificially built up or composed of parts joined together in some definite manner." Century Dictionary. Depending upon the apparent intention of contracting parties or the aim of a statute, the word "building" has been given a broad or a restricted meaning in many adjudged cases. When the word has in view a place of habitation, an edifice, merely standing and walled, is not a "building" (Corbett v. Spring Garden Ins. Co., 40 App. Div. 628, 58 N. Y. Supp. 148), but dealing with agreements covering the bare subject of constructive work, the term "building" is satisfied by a fence (Livingston v. Ten Broeck, 16 Johns. 14, 8 Am. Dec. 287; Swasey v. County of Shasta, 141 Cal. 392, 74 Pac. 1031). So far as affected by the statute authorizing the adoption of the Building Code, in the direct distinction between a "structure" and a "building," a "sky sign," within such distinction, is a "structure," not a "building" (City of New York v. Wineburg Advg. Co., 122 App. Div. 748, 107 N. Y. Supp. 478), but, as between parties to a covenant touching the use of land, the prohibition of the erection of a "building" within certain limits has been extended to the construction of a fence, where the structure affected easements of light and air (Wright v. Evans, 2 Abb. Prac. [N. S.] 308).

In the case at bar the defendant was certainly not interested in the character of the possible erection in the neighboring lot, except as an obstruction of its advertising matter upon the leased premises. The intention was directly expressed by the words of the lease, whereby the tenant's right of cancellation depended upon the height of the "building" as tending to obstruct the views of its signs. Nor is it well conceivable that the landlords were otherwise concerned, or that both parties were intentionally playing the chance that a "building," in the sense of an edifice, might or might not be erected upon a plot controlled by somebody else. This condition for cancellation of the lease by a tenant whose enjoyment was impaired must be deemed to have a sensible relation to the occupancy which was to be enjoyed for a profitable sign display, rather than to express an agreement which was confined by strict construction to matters wholly unimportant, such as the character of the obscuring structure. According to the plaintiff's interpretation of this lease the condition of the fifteenth clause called for a house, not necessarily complete or useful, but still a house of some kind. Three walls of an abortive construction, a monument to an enterprise which had failed, would have been a "building," in line with the argument which so restricts the meaning of these parties, yet the whole purpose to be served was to provide against an occulting fabric, whether one wall or three or four. If the defendant's illuminated display were eclipsed by what was erected in front of it, this was the substantial thing to meet which the condition of the lease was aimed, and the only thing of importance to these parties when contracting with reference to the tenant's business of displaying words to be seen. A metal screen or the bulk of a furnished house might offer degrees of opacity having a scientific value, but none to be measured by a sign-seeking and frustrated public.

But, it is argued, the parties were admonished before the lease was made that a "sky sign" was not a "building," such having been the ruling in the Wineburg Case, supra. The obvious answer is that the parties were not contracting with reference to the administrative provisions of the Building Code, and that, in their situation, the use of the word "building" had been read, judicially, to cover any structure which interrupted easements intended to be protected. Wright v. Evans, supra. If parties always used the exactly opposite words to shade the meaning of their contracts, legal science would miss the enrichment of much judicial opinion to the effect that the words employed are to be read in the light of their apparent intent. In my view, the intention here is plain and the word "building" is to be read as a synonym for "structure," according to the definition of lexicographers as open to acceptance by the courts. See Caddy v. Interborough R. T. Co., 195 N. Y. 415, 429, 88 N. E. 747, 30 L. R. A. (N. S.) 30. The suggestion that the defendant could have raised its signs to avoid embarrassment from the enterprise of its neighbor has no bearing upon this question of interpretation. There was no such duty expressed or to be implied. Indeed, in a race to the stars the defendant would be less handicapped when pitted against a house-building than a sign-building rival. My conclusion is that a verdict should be directed, upon the defendant's motion, for the amount of the conceded rent accruing prior to cancellation of the lease. The plaintiff's motion to reopen the trial is denied; the relevancy of the proposed evidence that the parties had attorneys to advise them when the lease was signed not being apparent.

Plaintiff's motion for a direction of a verdict is denied. Exception in each instance, to the plaintiff.

Ordered accordingly.