**FRANKEL et al. v. FOREMAN & CLARK, Inc.**

Circuit Court of Appeals, Second Circuit. June 3, 1929.

No. 162.

84

Hirsch, Limburg & Hess, of New York City (Herbert R. Limburg, Lionel S. Popkin, and Joseph L. Weiner, all of New York City, of counsel), for appellant.

William Klein, of New York City (Milton R. Weinberger and Jerome Weinstein, both of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). There can be no doubt that the charge as to the burden of proof was erroneous as to both causes of action.

The first cause of action was to recover the purchase price, and was founded upon the theory that the title to the 170 coats had passed to the buyer. Section 125(3) and (4) of the New York Personal Property Law (Consol. Laws, c. 41) provides that:

"3. Where the seller delivers to the buyer the goods he contracted to sell mixed with goods of a different description not included in the contract, the buyer may accept the goods which are in accordance with the contract and reject the rest, or he may reject the whole.

"4. The provisions of this section are subject to any usage of trade, special agreement, or course of dealing between the parties."

These statutory provisions were accentuated by the clause on the order for the merchandise that "all goods not fully up to sample * * * will be returned or held subject to shipper's order, expense and risk."

Section 128(1) of the Personal Property Law provides that:

"Where goods are delivered to the buyer, which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity to examine them for the purpose of ascertaining whether they are in conformity with the contract."

When acceptance takes place is further defined by section 129 of the act which says:

"The buyer is deemed to have accepted the goods * * * when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

■ When the title has passed, an action for the price of the goods is given to the vendor under section 144(1) of the act, as well as by common law.

But the burden of showing that the goods as delivered met the requirements of the contract and in this case corresponded with the sample was upon the plaintiffs. Pope v. Allis, 115 U. S. 363, 6 S. Ct. 69, 29 L. Ed. 393; Société Bordelaise de Conserves & Produits Alimentaires v. Wood & Selick, 188 App. Div. 267, 177 N. Y. S. 14; Miller v. Ungerer & Co., 188 App. Div. 655, at page 657, 176 N. Y. S. 850; Thomson Co. v. International Compositions Co., 191 App. Div. 553, at page 556, 181 N. Y. S. 637; Union Broach Co. v. Guterman (Sup.) 187 N. Y. S. 477; Ridless v. Polacoff (Sup.) 175 N. Y. S. 756; Grand Union Folding Box Co. v. Rose Mirror Works (Sup.) 173 N. Y. S. 433; Zoller v. Morse, 130 Mass. 267; Bianchi Granite Co. v. Terre Haute Monument Co., 91 Vt. 177, 99 A. 875.

In Williston on Sales (2d Ed.) § 255, the author says:

"If the seller contracts to deliver goods like a sample, and the buyer refuses them, he cannot recover upon the contract without showing that the buyer is in default in refusing the goods, and this cannot be shown without proof that the goods correspond to the sample. The burden of proof, therefore, is upon the seller to establish that fact."

In Glass & Co. v. Misroch, 239 N. Y. 475, 147 N. E. 71, though the goods corresponded with the requirements of the contract it was contended that the right to inspect, which survived delivery, prevented title from passing. The New York Court of Appeals held that such was not the law, and Cardozo, J., said:

"Undoubtedly, a right survives to examine and reject thereafter, but it survives as a condition subsequent, and its exercise does not bar an action for the price if the goods rejected were in truth in a deliverable state. When we speak of the condition as subsequent, we mean that assent to the appropriation stands unless revoked for a sufficient cause. It is a different question whether in the event of revocation, the seller is relieved of the burden of proving as a condition precedent to recovery that the goods, though appropriated with assent, conform in kind and quality to those called for by the contract."

It is thus quite apparent from this late pronouncement of the New York Court of Appeals that the seller who seeks to recover the contract price has the burden of showing that the goods conform to the requirements of the contract. We have not the case of a collateral warranty surviving the passage of title, but a cause of action dependent on the passing of title.

■ But it is said that the burden of proving compliance with the contract was shifted because the defendant, though pleading a general denial, alleged as a separate defense that the goods did not conform to the samples. That a defendant by so pleading shifts the burden of proof is a conception without any basis in natural justice and having no legal foundation. The statement of the facts upon which the defendant intended to rely may have been merely loose pleading, or it may have been thought to be appropriate because of section 242 of the New York Civil Practice Act, which requires a defendant to plead by way of defense any matter which may take the opposite party by surprise. In any event, it cannot affect the burden of proof. A contention that a pleading much like the one here had such an effect was recently overruled in Union Broach Co. v. Guterman (Sup.) 187 N. Y. S. 477.

■■ The 9 coats out of the lot of 170 which were returned as late as the month of March were retained by the buyer beyond any reasonable time which might have been required to examine them. These, as a matter of law, must be paid for at $21 apiece under the terms of the contract. There was, however, such a large number of coats subject to examination that we cannot say as a matter

of law that the other coats of the lot of 170, even those returned as late as December 11, were retained beyond a reasonable time. Whether they were or were not was a question for the jury.

The charge as to "substantial compliance" was erroneous. It is true that, if the goods in dispute were indistinguishable from the samples for mercantile purposes, trifling variations would not count. But no such definition of substantial compliance was given by the trial judge. The matter was left to the jury in a charge referring to irrelevant testimony, which plaintiffs had introduced, to the effect that a failure to comply with the contract as to 2 or 3 per cent. of the coats was a common and accepted thing, and saying that substantial compliance with the contract would entitle plaintiffs to recover. Whatever the trial judge may have had in mind, his charge as to substantial compliance was likely to mislead, and we deem it erroneous. Pope v. Allis, 115 U. S. 636, at page 371, 6 S. Ct. 69, 29 L. Ed. 393; In re A. W. Cowen & Bros. (C. C. A.) 11 F.(2d) 692, at page 694; Levi Strauss & Co. v. Silverstein (C. C. A.) 248 F. 393, at page 396.

The erroneous instructions regarding the burden of proof and substantial compliance with the contract embraced the second cause of action, as well as the first.

The defendant raises a further objection to the proof of damages in the second cause of action. The damages awarded were based on the amount received on the resale of the 360 coats 2½ months after the time when they were rejected and returned. The proper measure of damages was the difference between the contract price and the market price at the time when the goods ought to have been accepted. Uniform Sales Act (Personal Property Law, §§ 82–158) § 145(3). The resale was only to ascertain the value at that time. But the testimony indicates that November 16, when the coats were returned, was the height of the season for this merchandise, and no attempt was made to sell it until after December 7 (folio 200), when there was a low market. In such circumstances, a sale on the 1st of February could hardly be regarded as any evidence of the market value of the 360 coats at the time of the breach. There not only was no proof that the market value of the goods had not changed between the date of the breach and the time of the resale, but the testimony seems to indicate that it had. The amount received at such a sale furnished no basis for computing damages. Waumbek Mfg. Co. v. Alfandri, 196 App. Div. 64, 187 N. Y.

S. 439; Bonynge v. Carex Co. (Sup.) 188 N. Y. S. 751. It is true that what is a reasonable time within which to make a sale, in order to furnish an estimate of the market value, is, within proper limits, a question for the jury (Hausman v. Buchman, 189 App. Div. 597, 179 N. Y. S. 26); but the testimony should at least not show that the market had fallen between the date of the breach and the time when the sale was made. The evidence of the amount realized on the resale was objected to by the defendant, and we think should not have been admitted, without some proof that the coats had not changed in value since the date of the breach, or that there was no available market between the date of the return and the date of the resale.

Plaintiffs have contended that they delayed the resale because of negotiations for settlement. But such discussion as there was between one of the plaintiffs and the defendant's salesman involved no extension of the contract and effected no agreement of any kind. The defendant returned the coats November 16, and the plaintiffs made no attempt to dispose of them until after December 7, when the favorable market had passed.

Plaintiffs have also suggested that the sale was under a vendor's lien and could be made at any time in the exercise of reasonable care. Sales Act, § 141(5). But the coats were sold on a 90 days' credit and had been delivered by the vendors to the buyer, so that no vendor's lien could exist. Rummell v. Blanchard, 216 N. Y. 348, at page 354, 110 N. E. 765, Ann. Cas. 1917D, 109.

It is further maintained that the contract was indivisible, and that for this reason the acceptance of a part of the deliveries prevented the defendant from rejecting any of the remainder. Such a contention may not prevail, since the adoption of the Uniform Sales Act, § 125 (3) and (4), as well as the language of the contract itself, gave the defendant the right to reject any coat which did not conform to the samples. Portfolio v. Rubin, 233 N. Y. 439, 135 N. E. 843; Czaronikow Rionda Co. v. West Market Grocery Co. (C. C. A.) 21 F.(2d) 309.

The errors in the charge as to the burden of proof and as to "subantial compliance" with the terms of the contract affected both causes of action and were plainly prejudicial. The error in admitting evidence over objection and exception of the amount realized on the resale of the 360 coats vitally affected the proof of damages in the second cause of action.

The judgment is reversed, unless the

plaintiffs shall stipulate to reduce their damages to $664.50 (which is the aggregate of $181, representing the purchase price for the 9 coats retained by the defendant until March, 1926, and the admitted liability of $483.50), with interest from November 16, 1925.